# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 12-CR-0127-CVE |
| BRYAN EARL GOAD, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Suppress and Brief in Support (Dkt. # 16) and two supplements to the motion to suppress (Dkt. ## 20, 21).[1] Defendant is charged with two counts of possession of a firearm after former felony conviction in violation of 18 U.S.C. § 922(g)(1). Dkt. # 2. Defendant's motion to suppress relates to evidence obtained under a search warrant issued on March 20, 2012, and this evidence is the basis for count two of the indictment. Defendant raises two primary arguments in support of his motion to suppress: (1) the affidavit for search warrant did not state enough facts from which a magistrate could have found probable cause to search the listed residence for firearms, and (2) the search warrant was overbroad because police were authorized to search for drugs and related paraphernalia when the affidavit for search warrant stated no facts suggesting that drugs were likely to be found at the residence. Dkt. # 16. The government has filed a response (Dkt. # 19) in opposition to defendant's motions, and defendant has filed a reply (Dkt. # 22). Defendant's motion to suppress was set for an evidentiary hearing on

---

[1] The supplements to the motion to suppress (Dkt. ## 20, 21) were filed to provide the Court copies of the affidavit for search warrant and the search warrant, and defendant does not raise new factual or legal arguments in these filings.

October 3, 2012. However, in his reply, defendant states that he stipulates to the facts stated in the government's response, and that the Court can resolve his motion to suppress based on the affidavit for search warrant and the search warrant, and an evidentiary hearing is unnecessary. Dkt. # 22, at 6. Based on defendant's stipulation, the Court finds that the evidentiary hearing should be stricken and the Court will rule based only on the parties' written submissions.

**I.**

On March 20, 2012, Osage County Investigator Ronald J. Wilson observed a traffic violation and attempted to initiate a traffic stop of the vehicle, but the driver of the vehicle refused to stop. Dkt. # 19, at 2. Police pursued the vehicle and, during the chase, the occupants of the vehicle threw a red duffle bag from the vehicle. Id. Police stopped the vehicle and determined that Bryan Goad was the driver. During an inventory search of the stopped vehicle, police also found one or more .22 caliber bullets[2] in a briefcase inside the car. Id. Police also recovered the red duffle bag, and found methamphetamine, marijuana, digital scales, plastic baggies, a smoking device, and heroin. Id. Around the same time, the Osage County Sheriff's Office received information that Goad kept several firearms at his residence, and they determined that Goad resided with his girlfriend, Vicki Powell, at 2203 Red Eagle Boulevard, Pawhuska, Oklahoma. Id.

Wilson prepared an affidavit for search warrant of Powell's residence, and the affidavit states that Goad was suspected of committing the crime of illegal possession of firearms and ammunition. The affidavit provides the following facts in support the request for a search warrant:

---

[2] Count one of the indictment charges defendant with possession of a single bullet. Dkt. # 2, at 1. However, the government's response states that multiple .22 caliber bullets were found during the inventory search of the vehicle, and defendant has stipulated to the recitation of facts contained in the response. Dkt. # 19, at 2. It is unnecessary for the Court to resolve this factual issue, as it will not affect the outcome of defendant's motion to suppress.

> Within the last 72 hours, your Affiant has received information from a Certified Reliable Informant (CRI) regarding the above named subject is in possession of firearms at the above described residence. The CRI advised the above named subject possesses a black .40 cal. UMP style tactical rifle along with numerous other rifles and shotguns.
>
> The CRI has provided continuous reliable information to the District 10 Drug Task Force on numerous occasion, leading to several search warrants, arrest [sic] and convictions.
>
> Your Affiant knows that the subject identified living within the residence is a convicted felon and as such, he is currently violating Title 21-1283 Illegal Possession of Firearms. A check of the aforementioned defendant criminal history revealed violations of the Oklahoma Uniformed [sic] Controlled Dangerous Substance act whereby as stated in Oklahoma State Statute Title 63 2-410, any person who pleads guilty or nolo contendere to a provision of this section are [sic] deemed to be convicted regardless of any deferred or suspended sentence status as outlined in Pratt VS [sic] State.

Dkt. # 20-1, at 2. The affidavit requested a warrant authorizing police to search for "any and all evidence of the crime of **'Illegal Possession of Firearms and Ammunitions'** [sic], also to include any equipment, paraphernalia, any device on which information can be either electronically or digitally stored (including but not limited to cell phones and computers), drug records, records that reflect dominion and control, receipts, money and unexplained income . . . ." Id. at 2.

Osage County Sheriff's deputies executed the search warrant and found five pistols and twelve rifles at the residence. Dkt. # 19, at 2-3. Two of the pistols and rifles were found in the living room and three pistols were found in the master bedroom. Id. The deputies found Goad's clothing in the residence. Id. at 3. Powell confirmed that Goad stayed at the residence sometimes and he had free access to the residence. Id. After the search warrant was executed, agent Carlos Sandoval of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and Osage County Detective Ryan Hensley advised Goad of his Miranda rights and asked whether he would agree to be interviewed. Goad stated that he wanted an attorney, and Sandolval and Hensley refrained from

interviewing Goad. However, Goad spontaneously stated that "I am a bad guy with multiple felony convictions," "I buy guns," and "I just got out of prison . . . there isn't much for me to say." Id. at 3.

The grand jury returned an indictment charging Goad with two counts of possession of a firearm and ammunition after former felony conviction in violation of 18 U.S.C. § 922(g)(1). Count one alleges that Goad possessed one round of ammunition on March 1, 2012. Dkt. # 2, at 1. Count two alleges that Goad possessed 13 firearms on March 20, 2012. Id. at 2.

## II.

Defendant asks the Court to suppress evidence seized under the search warrant during the search of Powell's residence on March 20, 2012. Defendant does not dispute that he lived at the residence and there is no issue as to his standing to challenge the validity of the search warrant. Defendant argues that the search warrant was invalid because a magistrate reviewing the affidavit for search warrant could not have found that there was probable cause to believe that defendant possessed firearms at the residence. Dkt. # 16, at 4-8. Defendant also argues that the provisions of the warrant allowing law enforcement officials to search for evidence of a drug crime are invalid, and these invalid provisions taint the entire warrant. Id. at 9-15.

## A.

Defendant initially argues that the affidavit for search warrant fails to state sufficient facts to establish probable cause that firearms were likely to be found at the residence. He claims that the alleged information provided by the CRI does not state when or where Goad possessed a firearm, and a magistrate could not have found probable cause to believe that firearms would be recovered at the residence. The government responds that the affidavit plainly states that the CRI provided

4

information that defendant possessed a specific firearm at Powell's residence and, considering the totality of the circumstances, the magistrate reasonably found that there was probable cause to issue a search warrant. Dkt. # 19, at 4-6.

The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213 (1983). In the context of search warrants, the Tenth Circuit requires that a magistrate issuing a search warrant find that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Gates, 462 U.S. at 238). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990). A magistrate may consider the affiant's experience as part of his probable cause determination. United States v. Soussi, 29 F.3d 565, 569 (10th Cir. 1994). When reviewing the search warrant affidavit, this Court must "interpret [the affidavit] in a common sense and realistic fashion." United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006). A reviewing court must show great deference to the magistrate's finding of probable cause and the magistrate's finding should be upheld if the magistrate had a "'substantial basis' for determining that probable cause existed." United States v. Perrine, 518 F.3d 1196, 1201 (10th Cir. 2008) (quoting United States v. Artez, 389 F.3d 1106, 1111 (10th Cir. 2004)).

Defendant asserts that the affidavit fails to fully explain the basis for the CRI's information, and the reviewing magistrate could not have relied on this information when issuing the warrant. Defendant claims that the affidavit fails to describe how the CRI obtained information that defendant possessed a rifle, and he claims that Wilson unreasonably inferred from the CRI that defendant

5

possessed the rifle at Powell's residence. Dkt. # 16, at 4. When probable cause is based on an informant's tip, "the court makes a probable cause determination based on the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge." United States v. Hendrix, 664 F.3d 1334, 1139 (10th Cir. 2011). If the basis for the informant's tip is not fully described in the affidavit, the court should consider whether the tip contains "the kind of highly specific or personal details from which one could reasonably infer that the [informant] had firsthand knowledge about the claimed criminal activity." United States v. Quezada-Enriquez, 567 F.3d 1228, 1233 (10th Cir. 2009).

Defendant's argument is based on a strained reading of the search warrant affidavit, and the affidavit plainly states that the informant advised Wilson that defendant possessed a .40 caliber UMP style tactical rifle and other firearms at Powell's residence. See Dkt. # 20-1, at 2. Defendant characterizes the CRI's information as conclusory, but a reviewing magistrate reading the affidavit could have reasonably inferred that the CRI had personal knowledge that defendant possessed a firearm at the residence. The CRI's tip specifically described the type of firearm that defendant allegedly possessed, and this specificity supports the reliability of the CRI's information. See Quezada-Enriquez, 567 F.3d at 1233. The affidavit also states that the CRI has provided reliable information in other cases, and this was relevant to the CRI's reliability in this case. United States v. Samuels, 493 F.3d 1187, 1192-93 (10th Cir. 2007). Defendant's motion to suppress asks the Court to question Wilson's interpretation of the CRI's tip, but the Court must show deference to the magistrate's finding of probable cause and most also interpret the affidavit in a "common sense and realistic fashion." Grimmett, 439 F.3d at 1270. The magistrate could reasonably have inferred that the informant advised Wilson that defendant possessed a .40 caliber UMP style tactical rifle and

6

other firearms at Powell's residence and that firearms would likely be found at the residence. Applying a common sense interpretation of the affidavit and showing deference to the magistrate's finding of probable cause, the Court finds that the magistrate had a substantial basis to find probable cause that defendant possessed firearms at Powell's residence.

The government argues that police relied on the warrant in good faith and, even if a Fourth Amendment violation occurred, no evidence seized during the March 20, 2012 search should be suppressed. There is a presumption that an officer relying on a warrant is acting in good faith and, although this presumption is not absolute, it "must carry some weight" with the Court. United States v. McKneely, 6 F.3d 1447, 1454 (10th Cir. 1993). When an officer relies on a warrant issued by a neutral magistrate, the good faith rule should apply unless the "the underlying documents are 'devoid of factual support'" or the officer's reliance on the warrant was "wholly unwarranted." Id.

The good faith exception applies when "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even though the search warrant was later deemed to be invalid." United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006) (quoting United States v. Leon, 468 U.S. 897, 920 (1984)). Excluding evidence obtained by police in good faith reliance on a search warrant would not deter future police misconduct and would penalize police for a magistrate's error in issuing the warrant. Leon, 468 U.S. at 920-21. In Leon, the Supreme Court identified four exceptions to the good faith rule. If a warrant is invalid, the good faith rule does not prevent exclusion of evidence (1) "if the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "where the magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319

(1979);" (3) in circumstances that "no reasonably well trained officer should rely on the warrant;" and (4) if a police officer relies on a warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. at 922-23. The good faith exception also does not apply if police improperly execute a warrant. The good faith exception to the exclusionary rule is intended to prevent the exclusion of evidence when a neutral third party has committed an error, but the good faith rule does not excuse police error in exceeding the scope of a search warrant or failing to comply with other terms of the warrant. United States v. Angelos, 433 F.3d 738 (10th Cir. 2006).

Even if the Court had found a Fourth Amendment violation, the good faith exception would be applicable and no evidence would be suppressed. Defendant argues that warrant was so lacking in indicia of probable cause that no reasonable police officer would have relied on it. However, the Court has already determined that the affidavit set forth sufficient facts from which a reviewing magistrate could have found probable cause to issue a search warrant, and defendant's argument is meritless.

**B.**

Defendant's final argument is that the warrant allowed police to search for evidence related to illegal drugs, but the affidavit contains no facts suggesting that defendant possessed drugs or drug paraphernalia. He claims that the invalid portions of the warrant relating to evidence of drug crimes so outweigh the valid portions of the warrant that all evidence seized under the warrant should be suppressed. Under the severance doctrine, "valid portions of a warrant are severed from the invalid portions and only material seized under the authority of the valid portions, or lawfully seized while executing the valid portions, are admissible." United States v. Sells, 463 F.3d 1148, 1155 (10th Cir.

8

2006).  However, severance is not appropriate in every case, and "[t]o make the severability doctrine applicable the valid portions of the warrant must be sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant." United States v. Naugle, 997 F.2d 819, 822 (10th Cir. 1993).

The parties agree that the Tenth Circuit's decision in Sells should guide the Court's application of the severance doctrine.  Dkt. # 16, at 11; Dkt. # 19, at 12.  Under Sells, the first step is to divide the warrant into "commonsense parts."  Sells, 463 F.3d at 1156.  The warrant allowed police to search for "any and all evidence of the crime of **"Illegal Possession of Firearms and Ammuntions"** [sic], also to include any equipment, paraphernalia, any device on which information can be either electronically or digitally stored (including but not limited to cell phones and computers, drug records, records that reflect dominion and control, receipts, money."  Dkt. # 21-1, at 1. When dividing the warrant into parts, the Court should avoid "hypertechnical" divisions and should look for the most logical categorization of the items.  Sells, 463 F.3d at 1166.  Defendant asks the Court separate the warrant into the following parts: "1) firearms and ammunition, 2) equipment, 3) paraphernalia, 4) any device on which information can either be electronically or digitally stored (including but not limited to cell phones and computers), 5) drug records, 6) records that reflect dominion and control, 7) receipts, and 8) money."  Dkt. # 16, at 11.   Some of these categorizations could qualify as "hypertechnical," but it is not necessary for the Court to reach this issue. The government does not concede that these divisions are appropriate but, instead, argues that valid portions of the warrant can be upheld even with these divisions.  Dkt. # 19, at 13.  However, the Court notes that in Sells the Tenth Circuit treated firearms and ammunition as separate categories

9

of evidence, and the Court will also treat firearms and ammunition as distinct provisions of the warrant. Sells, 463 F.3d at 1156.

After the warrant has been divided into commonsense parts, the next step is to determine whether the warrant describes with sufficient particularity those items for which there is probable cause. Sells, 463 F.3d at 1156. The warrant states that police could seize "any and all evidence of the crime of **"Illegal Possession of Firearms and Ammunitions"** [sic], and Court has already found that the affidavit provides probable cause to believe that defendant possessed firearms and ammunition at the residence. Thus, the warrant describes with enough specificity that police were authorized to search for firearms and ammunition. The government does not contend that the affidavit provided probable cause to believe that defendant possessed drugs, drug paraphernalia, drug records, or related items such as receipts and unexplained wealth. However, evidence of residency, such as "records that reflect dominion and control," could be within the scope of a search for firearms and ammunition to the extent that such evidence would help to establish defendant's possession of firearms at the residence. The term "equipment" could refer to firearm-related evidence, but it could also refer to evidence of drug use, manufacture, or trafficking. The Court will give defendant the benefit of the doubt and assume that "equipment" refers to drug-related equipment. Based on review of the warrant, the Court finds that the affidavit provided probable cause to search for firearms, ammunition, and "records that reflect dominion and control."

The Court must next consider whether the parts of the warrant that are supported by probable cause are "distinguishable from the invalid portions." Id. at 1158. The warrant in this case makes a clear division between "firearms and ammunition" and evidence related to a drug crime. One factor the Court should consider is whether the various divisions are interrelated or if each division

10

retains an independent character.  Id.  In this case, the valid portions of the warrant allowing police to search for firearms and ammunition are distinct from the portions of the warrant that permitted police to search for illegal drugs, drug records, and drug paraphernalia, and severance may be permissible.

Finally, the Court must consider whether the valid portions make up the "greater part of the warrant."  Id. at 1158-59.  The government argues that the Court should not focus on the number of divisions, as defendant does, but instead the Court should consider the "qualitative" aspects of the warrant tending to show that the goal of the search was to find evidence of a firearms offense.  Dkt. # 19, at 13.  Defendant argues that all evidence seized during the search should be suppressed because the invalid provisions of the warrant were so prominent as to allow impermissible searches into areas of the residence where firearms and ammunition could not be stored.  The Court disagrees with defendant's argument concerning the scope of the search.  Ammunition is relatively small and can be stored in almost all of the same places as drugs or drug paraphernalia.  Thus, the invalid provisions of the warrant did not expand the scope of the search.  It is apparent from the warrant that law enforcement officials intended to search for firearms and ammunition, and this is highlighted by the fact that the name of the suspected offense, "Illegal Possession of Firearms and Ammunitions," [sic] is typed in bold.  The government also points out the firearms were found in areas where "firearms and ammunition would logically" be kept, and this suggests that police did not exceed the scope of the valid provisions of the search warrant.  It is also important to note that this is not a drug case and it does not appear that any drugs were seized from the residence.  If drugs were seized, it would have been reasonable to suppress such evidence and allow the government to use properly seized firearms and ammunition.  However, the government is not seeking to introduce

evidence that would reasonably fall within the scope of the invalid provisions of the search warrant. The clear intent of the search warrant was to allow police to search for firearms and ammunition, and the Court finds that the valid provisions of the warrant make up the greater part of the search warrant. Severance of the invalid provisions of the warrant concerning drugs and drug-related evidence is appropriate under <u>Sells</u>, and firearms and ammunition seized during the search should not be suppressed.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress and Brief in Support (Dkt. # 16) is **denied**.

**IT IS FURTHER ORDERED** that the evidentiary hearing on defendant's motion to suppress set for October 3, 2012 is **stricken**, but the pretrial conference remains set for the same time.

**DATED** this 2nd day of October, 2012.

								_____
								CLAIRE V. EAGAN
								UNITED STATES DISTRICT JUDGE